## C. G. Wallace v. W. P. Monlinier.

[Abstract Kentucky Law Reporter, Vol. 4—253.]

**Measure of Damages in Conversion.**

Where a landlord is charged with taking possession of his tenant's crops by force and converting them to his own use, if the proof sustains the charges the measure of damages should be the value of the property converted less the value of the rental of the land for the time it was rented.

**Competency of Evidence.**

In a suit by a tenant against his landlord for conversion, where it is alleged that plaintiff's father as well as plaintiff was thrown

out of possession, but the father is not a party to the suit, and the court refused defendant's motion to strike out that part of the petition relating to the father, if such ruling was proper, then it was proper to prove the statements of the father as to the manner of his holding the possession.

**Motion to Strike Out.**

Where a tenant alone sues his landlord for dispossessing him and for conversion of his crops, and alleges that his father as well as himself was turned out of possession, on motion of the defendant, the court should have struck out that part of the petition relating to the father.

APPEAL FROM PENDLETON CHANCERY COURT.

September 14, 1882.

OPINION BY JUDGE PRYOR:

This is a peculiar case and one presenting some difficulty. It is claimed in the action instituted by the appellee that the appellant had violated a contract of leasing by the terms of which the appellee had the right to enter upon the premises and occupy them from March, 1875, till December, 1875, at a monthly rental of $——; that the appellant, disregarding his lease with force and arms, entered upon the premises before the expiration of his term, turned the appellee out of possession and took possession of his crops, converting the same to his own use. The action partakes of the nature of an action for a breach of the contract, of trespass quare clausum fregit, and of trover and conversion.

The proof shows that the father of the appellee was the owner of a tract of land lying in the county of Campbell, and that this land was sold to satisfy various liens and purchased by the appellant, Wallace, and others for $5,000; that the purchasers were entitled to their writ of possession, and in March, 1875, the appellee (the son of the original owner) came to Wallace at the instance of his father and proposed to rent the land until the following December; that they differed as to the price, and Wallace, declining to rent or fix the price until others interested were consulted, told the appellee in substance that he must give him his written obligation for the rent with security, but that he could go and plant his crop and he and his (the appellee's) attorney would fix up the details of the agreement. It seems

that the appellee left with that understanding and that he would furnish the security and enter into the agreement. This is in substance the testimony of the appellee and his attorney, Blakely. They both say that bond with surety was to be given, and the attorney says that the appellee gave him a power of attorney to execute the lease but that no security was ever furnished or any agreement made as to the amount of rent to be paid, and that Wallace called on him time and again for the obligation but his client failed to furnish it.

Wallace and Benton, the latter representing the other purchaser, or one of them, controvert the statements of Blakely and say that no permission was given to plant crops and no agreement entered into, but that the father of the appellee was in possession and had so remained since the sale without any other agreement than the promise of the son to return and make a contract of renting. So if the parties remained in the possession after the purchase by Wallace and others, they were subject to be turned out at any time under the writ of habeas facias unless there was some agreement to permit them to remain and cultivate the farm. It is certain that no such agreement was made, but on the contrary, looking alone to the testimony of the appellee and his attorney, the appellee was permitted to plant his crop on the assurance that he would give bond and security for the rent, and that his attorney and Wallace should arrange the matter. This he failed to do, and in fact admits that he failed to comply in any particular.

Evidence was offered to show that the father of the appellee stated that he did not intend that the contract should be complied with, but this was refused. In our opinion the evidence was competent. The son stated that he was sent by the father to make the contract, and the complaint is that the father as well as the son was turned out of possession, and on motion to strike out that part of the petition relating to the father the court below regarded it as properly a part of the complaint and refused to strike the allegation from the petition. Now if the overruling of the motion was proper under the circumstances it was proper to introduce the statements of the father as to the manner of his holding. If there had been no agreement of any character as to the possession the purchasers were entitled to their writ.

The only question, it seems to us, for the jury to determine was, Did the appellant consent that the appellee should plant his crop before executing his obligation or before an agreement as to the terms of the renting, upon the assurance by appellee that the written obligation with security should be given? If so, and the appellee violated his contract by refusing or neglecting to give any obligation for the rent, his recovery should be limited to the extent of the conversion of the crop by Wallace or by his authority, less the value of the rental. If there had been no crop planted and the appellee had failed to comply with his agreement as he admits he did, it leaves his father in possession having no other right than he would have had if the son had never seen Wallace.

But if Wallace consented to the planting of the crop or had a knowledge of his planting and cultivating it for three or four months it would amount to an acquiescence as to his right. The record shows no case for punitive damages on the idea even that the conditional consent of Wallace was given. If the crop was used or converted by Wallace or by the tenant of Wallace by the latter's direction, or he was refused permission to take it from the place by Wallace or by his authority, the latter is liable for its value, less the value of the rental. The damages if placed at the highest estimate made is more than the proof authorized. In fact, as this is an action for converting the property to the use of the appellant, the damages should be confined to the value of the property taken and converted by Wallace or those authorized by him to take it, less the value of the rent for the time he had the possession. The instructions were erroneous and misleading. There was no evidence of any lease or contract and no instruction should have been given upon either idea.

The only question is, Did the appellant consent that the crop should be planted before the terms of the contract were entered into upon the assurance that the contract would be entered, and if not, did the appellee plant and cultivate the crop with a knowledge on the part of Wallace that he was cultivating it? If so, the jury may imply consent. If these facts are established, and they are based alone on the testimony of the plaintiff and his witnesses, the jury can find the value of the property converted by Wallace or by his direction or authority, less the

value of the rental from March until the appellee was dispossessed. The motion to strike from the petition the allegation in regard to the father should have been sustained, and then the father's statement would be properly excluded.

The judgment below is *reversed* and cause remanded for a new trial in conformity with this opinion.

*R. D. Handy, A. Duvall, for appellant.*
*Wm. Lindsay, for appellee.*

